IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MCKEEVER<br>1303 Meadow Run<br>Copley, Ohio 44321<br>      Plaintiff,<br><br>    v.<br><br>Midwest Express, Inc.<br>1590 Township Rd 298<br>East Liberty, OH 43319<br><br><br>  **SERVE ALSO:**<br>  Midwest Express, Inc.<br>  c/o<br>  CT Corporation System<br>  4400 Easton Commons Way, Suite 125<br>  Columbus, Ohio 43219<br><br>      Defendant. | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(JURY DEMAND ENDORSED HEREIN)** |

 Plaintiff, Michael McKeever, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES

1. McKeever is a resident of the City of Copley, County of Summit, State of Ohio.

2. Defendant Midwest Express, Inc. ("Midwest") is a Delaware Corporation, with its principal place of business located in the City of East Liberty, County of Logan, State of Ohio.

3. Midwest was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

4. Midwest was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12101 *et seq.*

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that McKeever is alleging federal law claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

6. All material events alleged in this Complaint occurred in Logan County, Ohio.

7. This Court has supplemental jurisdiction over McKeever's state law claims pursuant to 28 U.S.C. § 1367 because McKeever's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, McKeever filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2020-01319, against Midwest ("McKeever EEOC Charge").

10. On or about December 7, 2020, the EEOC issued and mailed a Notice of Right to Sue letter regarding the Charges of Discrimination brought by McKeever against Midwest in the McKeever EEOC Charge.

11. McKeever received his Right to Sue letter from the EEOC on or about December 10, 2020, in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. McKeever has filed this Complaint within 90 days of receipt of the Notice of Right to Sue letter.

13. More than 60 days have elapsed since McKeever filed the McKeever EEOC Charge alleging violations of the ADEA.

14. McKeever has properly exhausted his administrative remedies, pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. McKeever is a former employee of Midwest.

16. McKeever began working for Midwest at its East Liberty warehouse on or about September 26, 2016.

17. McKeever was terminated on January 27, 2020.

18. At the time of his termination, McKeever was a supervisor.

19. At all times, McKeever was qualified for the position of supervisor.

20. At all relevant times, Midwest was engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C. § 2611(4).

21. At all relevant times, McKeever was employed by Midwest for at least 12 months and had at least 1,250 hours of service with Midwest and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

22. During his employment, McKeever had a good employment record with Midwest.

23. During the three years he worked there, McKeever had received positive performance reviews.

24. Until Midwest created an unlawful pretext for McKeever's termination, McKeever had no record of discipline at Midwest.

25. At the time of his termination, McKeever was sixty years old and a member of a statutorily-protected class.

26. On Tuesday, January 21, 2020, McKeever experienced a cardiac episode ("Cardiac Episode") at work.

27. His blood pressure spiked to dangerous levels.

28. He experienced chest pain.

29. He experienced weakness.

30. He experienced rapid heartrate.

31. McKeever was transported by ambulance from work to the hospital.

32. On Wednesday, January 22, 2020, McKeever underwent a cardiac catherization.

33. McKeever did not work the rest of the week.

34. McKeever's Cardiac Episode was a serious medical condition within the meaning of the FMLA.

35. McKeever's cardiac catherization was a serious medical condition within the meaning of the FMLA.

36. While recuperating at home on Friday, January 24, 2020, human resources representative Don Archambeau called McKeever.

37. Archambeau told McKeever he was suspended pending an investigation.

38. McKeever was given no other information about the nature or purpose of the investigation.

39. McKeever was merely told that "details will be provided later."

40. McKeever was not given an opportunity to participate in the investigation.

41. On Monday morning, January 27, 2020, McKeever emailed Midwest's on-site nurse, Mary Terry, to update her on his condition.

42. At that time, McKeever also submitted documentation to take approved FMLA leave.

43. Terry told McKeever that McKeever would need documentation in order to return to full duty at work.

44. Terry told McKeever that there were "concerns that [McKeever] will have a cardiac event at Midwest."

45. At approximately 3:00 p.m., Monday, January 27, 2020, human resources representatives Archambeau and Nikki Howard told McKeever that he was being terminated.

46. The reason they gave for McKeever's termination was that he had "breached the code of conduct."

47. Archambeau and Howard provided no other information to McKeever at that time.

48. Instead, they told McKeever, "You know what you did. You were caught, and you're guilty."

49. McKeever was not told why he was being terminated.

50. McKeever was given no warnings regarding the conduct for which he allegedly was being terminated.

51. On information and belief, Midwest has a progressive disciplinary policy ("Discipline Policy").

52. On information and belief, Midwest's Discipline Policy includes verbal and written warnings prior to termination.

53. Termination is the highest level of discipline in the Discipline Policy.

54. Midwest knowingly skipped progressive disciplinary steps in terminating McKeever.

55. Midwest knowingly terminated McKeever's employment.

56. Midwest knowingly took an adverse employment action against McKeever.

57. Midwest knowingly took an adverse action against McKeever.

58. Midwest intentionally skipped progressive disciplinary steps in terminating McKeever.

59. Midwest intentionally terminated McKeever's employment.

60. Midwest intentionally took an adverse employment action against McKeever.

61. Midwest intentionally took an adverse action against McKeever.

62. Midwest knew that skipping progressive disciplinary steps in terminating McKeever would cause him harm, including economic harm.

63. Midwest knew that terminating McKeever would cause him harm, including economic harm.

64. Midwest willfully skipped progressive disciplinary steps in terminating McKeever.

65. Midwest willfully terminated McKeever's employment.

66. Midwest willfully took an adverse employment action against McKeever.

67. Midwest willfully took an adverse action against McKeever.

68. McKeever later came to learn that the alleged misconduct was sexual misconduct.

69. During the time that McKeever worked at Midwest, other supervisors, under the age of 40, had engaged in alleged sexual misconduct at work.

70. Other employees who had engaged in alleged sexual misconduct at work instead were demoted or subjected to other disciplinary measures, but were not terminated.

71. McKeever had greater abilities and skills than significantly younger employees who were retained by Midwest.

72. Upon information and belief, McKeever's performance record at Midwest was superior to significantly younger employees who were retained.

73. Midwest treated McKeever unfavorably based on his age compared to significantly younger employees who were retained by Midwest.

74. Midwest's purported reason for McKeever's termination is pretext for age discrimination.

75. Midwest's purported reason for McKeever's termination is a pretext for disability discrimination.

76. McKeever's Cardiac Episode constituted a physical and/or mental impairment.

77. McKeever's Cardiac Episode significantly limited him in one or more major life activities, including working.

78. Because of his Cardiac Episode, McKeever has a record of physical and/or mental impairment.

79. As a direct and proximate result of the Defendants' conduct, McKeever suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq*.

80. McKeever restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. At all times relevant herein, McKeever, at age 60, was a member of a statutorily protected class under Ohio Revised Code § 4112.02.

82. As of the date of his termination, McKeever was fully qualified to perform the essential functions of his job.

83. By terminating McKeever in favor of younger employees, Defendants treated McKeever less favorably than other substantially younger, similarly situated employees.

84. Midwest treated McKeever differently than younger employees who were retained by Defendants because of McKeever's age.

85. Midwest's decision to terminate McKeever was based on an illegitimate discriminatory reason that was totally unrelated to McKeever's experience, credentials, qualifications, or performance.

86. Midwest terminated McKeever because of his age.

87. On information and belief, Midwest replaced McKeever with younger and less qualified employees.

88. McKeever's discharge allowed Midwest to retain one or more younger and less qualified employees.

89. Midwest violated Ohio Revised Code § 4112.02 by discharging McKeever on the basis of his age.

90. As a direct and proximate cause of Midwest's conduct, McKeever suffered and will continue to suffer damages.

## COUNT II:  AGE DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 623

91. McKeever restates each and every prior paragraph of this complaint, as if it were fully restated herein.

92. McKeever was 60 years old at the time of his termination.

93. At all times relevant, was a member of a statutorily-protected class under the ADEA.

94. Midwest treated McKeever differently from other similarly-situated employees based on his age.

95. Midwest violated the ADEA by discriminating against McKeever based on his age.

96. Midwest violated the ADEA by terminating his employment.

97. As a direct and proximate result of Midwest's conduct, McKeever suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III:  DISABILITY DISCRIMINATION IN VIOLATON OF AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12101 *ET SEQ*.

98. McKeever restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Midwest treated McKeever differently than other similarly situated employees based on his disabling condition.

100. Midwest treated McKeever differently than other similarly situated applicants based on his perceived disabling condition.

101. Midwest violated the Americans with Disabilities Act when it terminated McKeever.

102. As a direct and proximate result of Midwest's conduct, McKeever suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  DISABILITY DISCRIMINATION IN
## VIOLATION OF R.C. §4112.01 *ET SEQ.*

103. McKeever restates each and every prior paragraph of this Complaint, as it were fully restated herein.

104. Midwest treated McKeever differently than other similarly-situated employees based on his disabling condition.

105. Midwest treated McKeever differently than other similar-situated employees based on his perceived disabling condition.

106. Midwest terminated McKeever's employment based on his disability.

107. Midwest terminated McKeever's employment based on his perceived disability.

108. Midwest violated R.C. § 4112.02 when it discharged McKeever based on his disability.

109. Midwest violated R.C. § 4112.02 when it discharged McKeever based on his perceived disability.

110. Midwest violated R.C. § 4112.02 by discriminating against McKeever based on his disabling condition.

111. Midwest violated R.C. § 4112.02 by discriminating against McKeever based on his perceived disabling condition.

112. As a direct and proximate result of Midwest's conduct, McKeever suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF FMLA

113. McKeever restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

114. During his employment, McKeever utilized FMLA leave.

115. After McKeever used his qualified FMLA leave, Midwest retaliated against him.

116. Midwest retaliated against McKeever by terminating his employment.

117. Midwest willfully retaliated against McKeever in violation of 29 U.S.C. § 2615(a).

118. As a direct and proximate result of Midwest's wrongful conduct, McKeever is entitled to all damages provided for in 29 U.S.C. §2617, including liquidated damages, costs, and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McKeever requests judgment against Defendant and for an Order:

(a) Requiring Defendant to restore McKeever to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge McKeever's personnel file of all negative documentation;

(b) Awarding against Defendant compensatory and monetary damages to compensate McKeever for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount to be determined at trial;

(c) Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

(d) Awarding pre-judgment and post-judgment interest as provided by law;

(e) Awarding reasonable attorneys' fees and non-taxable costs for McKeever's claims as allowable under law;

(f) Awarding the taxable costs of this action; and,

(g) Awarding such other and further relief that this Court deems necessary and proper.

        Respectfully submitted,

        */s/ Trisha Breedlove*
        Trisha Breedlove (0095852)
        Sean Costello (0068612)
        **THE SPITZ LAW FIRM, LLC**
        1103 Schrock Road, Suite 307
        Columbus, Ohio 43229
        Phone: (216) 291-4744
        Fax: (216) 291-5744
        Email: trisha.breedlove@spitzlawfirm.com
                sean.costello@spitzlawfirm.com

        *Attorneys For Plaintiff Michael McKeever*

## JURY DEMAND

Plaintiff Michael McKeever demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Trisha Breedlove*
>Trisha Breedlove (0095852)
>Sean Costello (0068612)
>**THE SPITZ LAW FIRM, LLC**